Next case is ESSO Standard Oil v. Exxon This is the United States, 2008, Prop. 12 and Prop. 34 Knauss is it? Knauss May it please the court, my name is Curtis Knauss, I'm counsel for the plaintiff in this action, ESSO Standard Oil Company in Puerto Rico This case centers on Customs' illegal exaction of HMT payments on shipments between insular possessions and Customs' further refusal to refund these illegal exactions There's no disagreement that the payments at issue were contrary to the amended HMT statute What remains at issue, however, is means by which ESSO should be repaid these illegal exactions There are really two categories here, and you're arguing the one that was killed not too far within a year, right? And that is correct And it's a cross appeal on the other two? That's correct, Your Honor So the issue before the court today is whether and how to refund these illegal exactions I will present four viable means for ESSO to do just that First, Customs Headquarters tell us in 1989 Well, we're not starting from scratch, right? The prior court bill wasn't filed far within a year, so is that the only issue in your opinion? No, that's not exactly the issue that we've raised, Your Honor That's the issue that the government has cross appealed on ESSO prevailed on, as you mentioned, the two protests that the court found were refundable under 520C ESSO's... What's the inadvertence? What is the inadvertence that the trial court seized upon to allow you a year rather than a 90-day cutoff? Well, the court found it inconceivable that Customs could fail to implement the 1988 amendments to the HMT statute Do you have some obligation to ensure that you're paying the correct amounts and that you're assessed correctly? Absolutely, but that's what the trial court held But what ESSO is arguing today is that the mistake of fact was that neither Customs nor the importer knew that these import shipments were free of HMT tax assessment Further, neither Customs nor the importer knew the procedures and requirements to process such a claim Don't you have some obligation, is my question, to make sure that the law is being correctly applied to you? Under the Customs Mod Act, yes, importers have to take reasonable care in their importations But if, and this goes to our equitable issue, which is, did Customs mislead the imported public? And in this case, they certainly did But back to the Telex and the amendments of 1988, in section 2002B, they provided a new cause of action outside of the protest and 520C procedures But the Telex is not really a regulation for other official action that would give rise to a legal practice Well, in conjunction with the 1988 amendments, I would say it is akin to a Customs regulation, although there's no notice of comment Every notification issued by a government agency gives rise to some cause of action in and of itself? No, I wouldn't say that, but again, it was simply implementing the 1988 section 2002B amendments that the legislature approved Was it implemented or simply notified? It was doing both But did it, with adequate specificity to waive sovereign immunity, did it clarify that there would be a cause of action in the event that the refunds weren't granted properly? There was no express grant of a new cause of action But at the time, wouldn't that suggest then that the Congress expected that any mistakes would be remedied under the mistake of law provision? You'd have 90 days to bring it to the attention of the government? I think that's exactly what that implementation does It was published in 1988 So at that time, and at the time of the Telex publication, there were already import transactions that were outside of both the protest procedure and the 520C procedure So I think it's really the intent of the legislature to have created a new cause of action knowing full well that there were already transactions that were outside of those two processes So yes, I think that what both of them do do is implicitly create this new cause of action and waive sovereign immunity Both the Telex and the amendments under section 2002B provided for no time limit to file the refunds As I mentioned before, the actual date of the publication shows that prior importations had occurred Therefore, it was meant to capture those importations outside of both the protest procedure and the 520C procedure And the Court of International Trade erred in concluding that the Telex did not apply to imports And it's plain language provided for CF-7501s for imports as being subject to the refunds of the HM2 The second point that ESSO presents this morning is the refund procedure under 2424E5 is applicable to this case It's the only refund procedure- But you've got to have a quarterly summary report, right? Well, that's not explicitly stated in the refund procedure, no But this provision applies to those who file quarterly ESSO contends it applies to all payments of the HM2 It's a systematic reading of the regulation A describes the act itself, B provides the definitions, C lists the exemptions, D the special rules, and then E is all about collections But in context of the overall series of regulations, they seem to fall upon those who normally file quarterly That is correct, but there is no explicit prohibition And there's no mention of any refund procedure outside of 2424E5 And before 2000- This is really a procedure more for exporters, right? Well, there's a number of provisions The passengers, there's export shipments, there's FTZ shipments, so on and so forth So subsection E of 2424 captures all the possible HMT collections and refund procedures So everything is right there And as this court is well aware, before 2001, when the regulation was amended, there was no time limit for HMT refunds under that regulation The third point that ESSO would like to make this morning is that the denial of the claims was the first protestable decision And the Court of International Trade erred in finding that the actual denial of the refund claim was not the first protestable decision When customs exacts the HMT, they're acting in a ministerial role As this court has held in USU and others, tax is based on the value of cargo Congress set the amount of tax, customs follows, customs instructions, and again, simply acts in a ministerial role The Mitsubishi case is also illustrative here Where it said that customs cannot modify determinations, their underlying facts, or enforcement It's the same situation we have here ESSO timely filed protests on the refund claim denials And again, the CIT erred by finding that the denial was not protestable Finally, we have an equitable argument And ESSO believes that we fulfilled the requirements under Brockcamp and Irwin In that we pursued the claim with due diligence, and there was a misleading government action At this point, I'd like to say the rest of my time is up We will do that, Mr. Thomas Thank you Mr. Spoke If you'll pretend the third claim that was held, not filed within a year And argued on cross-appeal that the suit that was held to comply was 1520 Yes, your honor And with the court's permission, I will address the hour of cross-appeal first May it please the court ESSO paid the Harmanian's tax, and customs liquidated those entries On the assumption that the law required payment on those shipments The law did not require payment on those shipments This is a textbook example of a mistake of law The trial court erred by failing to give import to the rest of the section 1520c1 But the trial court held that this was just an inadvertence There was no discussion, interpretation of the law There was no error of law It was just an inadvertence Well, two points, your honor First, the statute doesn't just provide relief when there isn't an inadvertence As the court said in Ford Motor The second question, assuming that there is an inadvertence Is that that inadvertence is not also a mistake of law The fact that there was an inadvertence The categorization of this as an inadvertence Is that a final fact to which we have deference? No, well, I would say no, your honor Because it was a summary judgment motion Otherwise, wait Who failed to put into the software the proper provision to make sure the taxes were assessed? Our position is that it's the software vendor's responsibility if they choose to do so Customs does not review the software for its legal contents It merely reviews the software to ensure that it makes the correct electronic transmissions to Customs But even so, let's assume that the software forced ESSO to make this payment Against their will and against the law They still have 90 days from the date of liquidation Why did that happen? Why was the software not correct? Your honor, those facts are not in the record below That was not really addressed Is it within the trial court's power to determine that that was an inadvertence? That no one deliberately excluded the proper standard of law But instead did it out of inadvertence? Well, your honor, as the court said in Century and Quarters The repetition of inadvertence usually demonstrates an advertent misunderstanding of the law This is not the case where there was one accidental thing that happened Was there any evidence in the record that somebody misunderstood the law? The contested evidence here is that everyone misunderstood the law Everybody knew the law You put out a telex, everybody read the telex, everybody knew the law But it had not been applied That's not a mistake in the interpretation of the law That may well be an inadvertence in the application of the law, mightn't it? But even an inadvertent application of the law is a mistake of the law, your honor It would be hard to imagine how all the parties operating under the assumption that the statute required S.O. to pay this When in fact the statute did It doesn't matter whether the reason for that was an incorrect regulation Whether the reason for that was an independent legal conclusion that had been drawn by either of the parties It was a mistake of the law Can we look at one of the points Mr. Knauss made? He said the telex comes out, it announces the change of law And it applies it retroactively to April of 87 If in fact somebody had made a payment in April of 87 It would already have been past the one year time limit at the time the telex came out So certainly the government in making this announcement didn't expect there to be an even one year time limit, did it? The customs expected that the statutes that Congress has put in place in 1520 and 1514 to be followed But wait a second, the telex gave those retroactive rights which were then wholly unenforceable They were wholly specious rights Does the government offer retroactive rights that are illegal? No, your honor Then they didn't expect even a one year time limit Whose mistake of law was that? I'm not sure how to answer that I'm not sure how you answer it either But it certainly cuts against the idea that there's a one year time limit, doesn't it? No, your honor Even a one year time limit, it's certainly not a 90 day which you insist on I think that the way to look at that is that the telex specifically refers to previously filed forms HMT that had already been Fine, we'll take that If someone had filed a request as of April of 87, it was already passed, clearly passed 90 days and well past a year at the time the telex comes out, right? It's conceivable that it would have been a year past So the government didn't anticipate application of those time limits either But that was not customs Customs did not have the power to eviscerate the finality rules in 1514 or 1520 Only Congress has that power And certainly here if you're talking about Was that an inadvertence or a mistake of law? With certainly with respect to these retroactive Yes, the telex being issued with language that could not have been enforced Well, it could have been enforced had the liquidation not been final There certainly would have been a body of entries whose liquidation was not final for whom they could have received a refund under 1514 But to the extent that Congress didn't anticipate there being a certain set of entries for whom the finality period was expired That was something that Congress failed to do, not something that customs had the power Yes, but was customs' mistake in putting out the telex then a mistake of law or an inadvertence? I don't think it's either because the telex, one, informed everyone this is the state of the new law And if there is, finality is not, if the liquidations are not final then they would be entitled to receive refund of those retroactive payments Ms. Hogan, this court handed down a decision that Century Importers extremely well stated and articulated The trial court sort of skipped over it, how do you distinguish? We believe that this case is exactly on point with Century Importers In Century Importers, the importer claimed that there was an inadvertence by failing to file a certain form that was needed to proceed duty-free treatment And this court found that the failure to do that over and over and over again indicated not an inadvertence But actually ignorance of the law, which is a mistake of law It's very similar to the case in the executive term, the same result was failure to do something over and over again indicates not an inadvertence Not the failure to put something in an envelope once, as was the case in AVIAL But in fact, that the importer was operating under the assumption that something was legally owed when in fact it was not  The trial court said this may very well be the last case in which the court must decide the excruciatingly difficult question, etc. Why is that? In 2004, Congress rescinded 520, or 1520 So, as far as we know, there's one other case before the court of international trade on almost exactly identical facts That would be the last time that... You don't regard this as an excruciatingly difficult question? Yes. We don't believe this is an excruciatingly difficult question in this case Just to digress for just a minute, nobody's arguing that the tax wasn't imposed at the time Why are we even here? Why doesn't the government just give the money back? Because this customs is obligated to follow what Congress has set forth as finality If importers could come back years and years later Separate and apart from the niceties of these statutes and regulations The government is in possession of monies collected when a tax wasn't on the statute, on the books But again, that happens, not frequently, but it may often be the case where an importer pays something that they're not legally obligated to pay And if they don't bring that to the attention of customs within 90 days, then that liquidation is final And customs can't be in the habit of... First of all, it doesn't have statutory authority to refund something when Congress has said it's final And it would seriously impose on customs' ability to administrate their program sufficiently If these statutes and limitations were not strictly followed Let me just address a few issues that were raised by ESSO's counsel First, with respect to the regulation First of all, ESSO has never claimed that it actually followed 24-24-85 It's never claimed that it attempted to file an amended quarterly summary court form 350 and send that to customs It didn't do that And the reason that it didn't do that is because it didn't make quarterly payments So there was no way that it could comply with this regulation Which indicates that this regulation did only apply to quarterly payers and not to importers Rather, importers were still subject to the same protests and reliquidation statutes that they are always subject to Even if the tax that they are seeking a refund of is the harbor maintenance tax for 26 U.S.C. 44-62 H&T is treated like a customs duty unless customs issues a regulation stating otherwise So clearly the plain language of E-5 demonstrates that it does not apply to importers Second, the denial of ESSO's request for liquidation was not its first participle decision Liquidation was That's simply by statute and there can be no question that liquidation gave them the opportunity to protest Finally, with respect to their equitable argument First of all, ESSO did not raise this in its opening brief And we did not adequately address this issue in our brief because it was not raised But assuming that 15-14 or 15-20C could be equitably told And this court has never held that it can be equitably told in due silence This court assumed but never decided But even assuming that could be It's very clear in the ignorance that the law is not a basis to hold a statute of limitations That is beyond dispute This court has no other questions? I'll save the remainder of time for rebuttals on across the field issues Mr. Knauss, once you've gotten notice through the Telex and indeed by the passage of the statute Why isn't it just fair to impose the time limit on you that is imposed on every other importer 90 days from liquidation You've had your notice, you've got 90 days from liquidation Well, as this court held Is it fair for every other importer? Why isn't it fair for you? Well, because of the mistakes of fact that we mentioned earlier What's the mistake of fact? The customs and the importer, neither one knew that these shipments were exempt from the HMT payment Further, neither party knew the process I'm sure that every importer would like to say we didn't really realize that we had to pay all these duties But they still get just 90 days We don't like to pay all these duties Whatever their argument is, they get 90 days Well, again, 90 days from a customs decision Yeah, liquidation That's right That's not contested, that's the law It is the law And this court has held in Mitsubishi that just because there's a liquidation doesn't mean that that's sufficient to arise to a customs decision So in that case, the same dumping duties that were applied, they were liquidated It was an importer Same set of facts here Customs did not make a decision in liquidation They simply followed Congress' intent, which is to take an ad valorem tax on the value of the cargo They didn't determine classification or valuation They did none of those things that are usually attached to a customs decision So just because the government customs says, hey, well, it went through liquidation, therefore you're subject to the protest process Really neglects this court's precedent, which is customs has to make a decision They did not do that in this case Speaking of this court's precedent, how do you distinguish century? Well, century came up under a different set of facts Again, in this case, there was no decision on liquidation So there was no protestable decision upon liquidation So there was no way, there was nothing for the importer to protest And the first time that there was a protestable decision, that was when customs denied their refund claim Which, I might add, customs mistakenly characterized as a 1520C claim Which it wasn't, it was simply a refund claim pursuant to Section 2002B At liquidation, do you receive some kind of notice of exactly what you're paying? You know, a line item of how much is tax and harbor tax and so forth? You get, yes, there's a receipt of all those things, yes Then at that point, you had notice you were paying harbor tax, you had 90 days, right? Same thing as Mitsubishi, they were assessing the dumping duties at that time They knew what all the payments were You knew the law, you knew what you've been assessed All you have to do is add and subtract at that point, right? That's all, you just have to check off to see, that's what they pay, that's what the importer does There's absolutely no decision This, in getting to the government's cross-appeal This is exactly the type of factual situation the 520C was developed for As this court referred to in its C.J. Tower case Although there's no direct legislative history, it looked for the prior act's legislative history And to Justice Flynn's point, testimony on the record and legislative history says The government has no interest in retaining duties which were improperly collected as a result of clarify or mistake of fact or advertence The inability to make refunds in such cases results in great dissatisfaction and a feeling of injustice among importers And that's what we're really here for That customs failed to implement this Act of Congress And really has no rights nor interest in retaining these illegally executed H.I.T. payments What if there was a regulation that customization was following in implementing and imposing a duty And the regulation was simply inconsistent with the statute and hadn't been changed There was a strict regulation as opposed to the software in question here And the duty was paid and not protested That would be a clear error of law, right? The facts are not in dispute The legal consequences are not fully appreciated And that's what the government is arguing and that's why this court is wrestling As other courts have with mistake of fact versus mistake of law That's really customs blaming the victim here Saying, hey, the importer should have known that we didn't implement the direction of Congress But that would be the same in my hypothetical, huh? It is So why is the outcome different? Well, again, because That would clearly be a question and error of law That would be, but that's not the mistake here The mistake is that neither customs nor the importer knew that these shipments were exempt from that H.I.T. payment At the time of import Which is exactly on all fours with What customs knew was the law was Well, that's unclear Correct Correct Same thing for the importer Presumably That's what makes it more important that they want to keep those those taxes if they knew that they were legal And this would be the same in my hypothetical Presumably both customs and the importer knew what the law was And presumably they knew the regulation was not a date, it was ineffective But nonetheless, it was a buy That's an error of law That would be an error of law We're not here in this case Where we are is that there were mistakes of fact made by both customs and the importer On what shipments were exempt from H.I.T. I mean, ignorance of the law doesn't make any difference No, it does not So, I'm still having trouble As to the difference between my hypothetical and what we're dealing with Well, I don't think there's any, again, there's been no misconstruing of the law In terms of, it's not like a classification case where You know, a tax was imposed on a tax shipment Exactly, and that's Not because of any mistake Somebody didn't fill out the wrong form The form was filled out in accordance with the software which hadn't been properly updated That's right, and by the way, that software was okayed by customs But this case on all fours was both C.J. Tower and G.N.R. Produce When you look at C.J. Tower facts, it's the same things that you were questioning And that is, neither customs nor the importer in that case knew That the aircraft parts were subject to the emergency war materials provision Which is a different part of the tariff schedule So neither one knew I mean, the law seemingly was clear If you could go back, everybody could sit down and say, hey, here's the law And no one disagreed that, in retrospect, that it was amenable to emergency war materials So, in that case, and in this case, this court should find that it was a mistake of fact Thank you Thank you, Mr. Knauss Thank you Ms. Hogan, we'll give you both your hands Thank you, Your Honor Maybe it would help to go back, just as the way this works The importer files entry at the time merchandise comes into the country It makes the initial decision which taxes and which fees are owed And under statute, it's required to use reasonable care in determining what that is Customs liquidates the entry It may actually physically look at the entry It may bypass it because it can't look at every single entry Either way, at liquidation, all legal decisions of customs, whether explicit or implicit Are embodied in that liquidation That's 19 U.S.C. 1514a There can be no question that that was the point at which customs made a legal determination That the agency was owed And that triggered the 1998 statute of limitations to file a protest And in fact, in ESSA's response brief It provides the court with some examples of where customs actually looked at the entries And said, hey, you owe more HMT than we thought initially So there is at least some indication that in some cases customs did in fact look at it And make a determination that HMT was owed But even if it hadn't, the liquidation If they had just put the decimal point in the wrong place And somehow, by a factor of 10, increased their duty That would be an inadvertence, right? For Claire Clare, yes At Claire Clare, so that would be... Why isn't this very similar to that? Why isn't this closer to that Than someone mistakenly interpreting the law incorrectly? Because this is the party operating under the assumption That the HMT was owed over and over and over and over again And if ESSA's argument is that it delegated its duty to determine what its legal obligations were To a software program That does not excuse it from meeting the 90-day protest period It still had an obligation to use reasonable care To check and say, hey, the statute conflicts with the regulation And the statute is beneficial to me I think that I would bring this to customs' attention that they've been doing this wrong But isn't that exactly the same as Judge Rader's hypothetical? With the decimal point shifted? No, Your Honor, it's not Because if it was the case of a decimal point being shifted once And depending on the facts, of course, there could be an argument that that was just simply a clerical error No, I understood his hypothetical, maybe I misunderstood it But I understood it wasn't just shifted once But it was in the software that was wrong And it was charged over and over and over and over again Or charged ten times what they owed over and over and over again And again, Your Honor, I think we would have to look at the facts But the importer is ultimately responsible for ensuring that it's calculated its legal obligations correctly And if it were mistakenly believing that it owed a 10% tax instead of a 1% tax over and over and over again That might give rise to an argument that it was a mistake of law, depending on the facts But here, you know, there could be no dispute As it says, it's still sleeping We were unaware until 1997 that the statute did not require us to pay it That's a mistake of law Do you have one final quick point, Ms. Hogan? No, Your Honor, I think we'll rest on the briefs Thank you Thank you very much